# 15-2103-cv

## United States Court of Appeals

*for the*

## Second Circuit

LYNN TILTON, PATRIARCH PARTNERS, LLC,
PATRIARCH PARTNERS VIII, LLC, PATRIARCH PARTNERS XIV, LLC,
PATRIARCH PARTNERS XV, LLC,

*Plaintiffs-Appellants,*

– v. –

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

DAVID M. ZORNOW
CHRISTOPHER J. GUNTHER
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

– and –

SUSAN E. BRUNE
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, New York 10004
(212) 668-1900

*Attorneys for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC certifies the following: LD Investments, LLC is the parent company of Patriarch Partners, LLC. Zohar Holding, LLC is the parent company of Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC. There is no publicly-held corporation owning ten percent (10%) or more of the shares of the above entities.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF AUTHORITIES ...............................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED...................................................................1

PRELIMINARY STATEMENT ............................................................2

STATEMENT OF THE CASE.............................................................5

    I.      BACKGROUND ...............................................................5

    II.     THE SEC INQUIRY AND THE CHARGES ....................................6

    III.   THE DISTRICT COURT PROCEEDINGS ......................................8

    IV.   *HILL v. SEC* .............................................................9

    V.    THE DECISION BELOW ....................................................10

SUMMARY OF THE ARGUMENT ......................................................11

ARGUMENT ..........................................................................12

    I.      FEDERAL COURTS HAVE JURISDICTION TO DETERMINE THE THRESHOLD QUESTION OF WHETHER SEC ALJs ARE "OFFICERS" UNDER THE APPOINTMENTS CLAUSE ............................................12

        A. Key Precedents ...........................................................13

        B. The *Thunder Basin* Considerations...................................17

            1. No Opportunity for Meaningful Review ...................17

            2. Wholly Collateral................................................22

            3. Outside Agency's Expertise...................................24

    II.     THIS COURT SHOULD ADDRESS THE MERITS OF THE APPOINTMENTS CLAUSE CLAIM AND ORDER RELIEF .......................................................................24

        A. The Pure Legal Question Does Not Require Remand ...................24

B. Completeness of the Factual Record...............................................26

C. The Pure Legal Issue Needs To Be Addressed by this
Court Eventually ........................................................................27

D. Delay Will Harm the Parties and the Public Interest ...................28

III.  THE COURT SHOULD ORDER A PERMANENT
INJUNCTION TO ENJOIN THE SEC's
ADMINISTRATIVE PROCEEDING ...................................................30

A. The SEC ALJ Presiding Over the Administrative
Proceedings Against Patriarch Was Not Appointed in a
Manner Consistent with the Appointments Clause.......................30

B. SEC ALJs Exercise "Significant Authority," Rendering
Them Inferior Officers for Purposes of Article II ........................32

C. SEC ALJs Are Indistinguishable from Other Judges Who
Are Deemed "Officers"................................................................34

D. The Finality of SEC ALJ Decisions..............................................37

1. SEC ALJs Issue Final Decisions for the Commission .............38

2. Supreme Court and Second Circuit Precedent
Contradict the SEC's Broad Reading of *Landry* .....................40

E. Patriarch Will Suffer Irreparable Harm if the
Administrative Proceedings Are Not Enjoined..............................43

CONCLUSION .......................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Altman v. SEC*,
687 F.3d 44 (2d Cir. 2012) ...........................................................................15

*Bebo v. SEC*,
15 Civ. 3, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015), *appeal filed*,
No. 15-1511 (7th Cir. Mar. 10, 2015) ...........................................................37

*Bond v. United States*,
131 S. Ct. 2355 (2011).................................................................................21

*Buckley v. Valeo*,
424 U.S. 1 (1976)....................................................................................32, 36

*Butz v. Economou*,
438 U.S. 478 (1978)................................................................................34, 36

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009)......................................................................................23

*Cent. Hudson Gas & Elec. Corp. v. EPA*,
587 F.2d 549 (2d Cir. 1978) ................................................................*passim*

*Chau v. SEC*,
___ F. Supp. 3d ___, 2014 WL 6984236 (S.D.N.Y. Dec. 11, 2014) ......16, 29

*Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*,
516 F.2d 172 (2d Cir. 1975), *rev'd on other grounds by Piper v.
Chris-Craft Industries, Inc.*, 430 U.S. 1 (1977) ...............................26, 27, 28

*Diginet, Inc. v. Western Union ATS, Inc.*,
958 F.2d 1388 (7th Cir. 1992) .....................................................................26

*Doe v. Sundquist*,
106 F.3d 702 (6th Cir. 1997) .......................................................................26

*Duka v. SEC*,
No. 15 Civ. 357 (RMB)(SN), 2015 WL 1943245
(S.D.N.Y. Apr. 15, 2015) ......................................................................*passim*

*Eastway Constr. Corp. v. City of New York*,
821 F.2d 121 (2d Cir. 1987) .........................................................................25

*Edmond v. United States*,
    520 U.S. 651 (1997)..................................................................36

*Elgin v. Department of Treasury*,
    132 S. Ct. 2126 (2012)........................................................ 22-23

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    561 U.S. 477 (2010).............................................................*passim*

*Freytag v. Comm'r*,
    501 U.S. 868 (1991).............................................................*passim*

*G.E. Co. v. Jackson*,
    610 F.3d 110 (D.C. Cir. 2010)..................................................15

*Green v. United States*,
    355 U.S. 184 (1957)..................................................................19

*Gupta v. SEC*,
    796 F. Supp. 2d 503 (S.D.N.Y. 2011) .........................................19

*Hill v. SEC*,
    No. 15-01801-LMM, slip op. (N.D. Ga. June 8, 2015),
    *appeal pending*, No. 15-12831 (11th Cir.) ..............................*passim*

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935)..................................................................32

*In re Tilton*,
    Release No. 2647 (ALJ May 7, 2015) ............................................8

*In re Vision Specialist Group, LLC*,
    No. 3-15920, 2014 WL 4827686 (Sept. 30, 2014).........................39

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012)..................................................31

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) .....................................................20

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996) ........................................................21

*Landry v. FDIC*,
    204 F.3d 1125 (D.C. Cir. 2000).............................................*passim*

*Lee v. Bickell*,
 292 U.S. 415 (1934)...................................................................................20

*McNary v. Haitian Refugee Center, Inc.*,
 498 U.S. 479 (1991)...................................................................................14

*Reno v. Catholic Soc. Servs., Inc.*,
 509 U.S. 43 (1983).....................................................................................14

*Ryder v. United States*,
 515 U.S. 177 (1995)...................................................................................36

*Samuels, Kramer & Co. v. Comm'r*,
 930 F.2d 975 (2d Cir. 1991) .....................................................12, 36, 41, 42

*Statharos v. New York City Taxi and Limousine Comm'n*,
 198 F.3d 317 (2d Cir. 1999) ......................................................................21

*Sterling Drug, Inc. v. Weinberger*,
 509 F.2d 1236 (2d Cir. 1975) ....................................................................18

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994)..............................................................................17, 22

*Tilton v. SEC*,
 No. 15-CV-2472 (RA) (S.D.N.Y. June 30, 2015).................................*passim*

*Touche Ross & Co. v. SEC*,
 609 F.2d 570 (2d Cir. 1979) ..........................................................15, 16, 18

*Weiss v. United States*,
 510 U.S. 163 (1994)...................................................................................36

## Statutes & Other Authorities:

U.S. Constitution, art. II.....................................................................*passim*

U.S. Constitution, art. II, Appointments Clause ...............................*passim*

U.S. Constitution, art. II, § 2, cl. 2 ..................................................2, 30

U.S. Constitution, art. III .............................................................34, 44

5 U.S.C. § 556.....................................................................................35

5 U.S.C. § 556(c) ................................................................................35

5 U.S.C. § 556(c)(1) .................................................................35

5 U.S.C. § 556(c)(4) .................................................................35

5 U.S.C. § 557 .........................................................................35

5 U.S.C. § 557(b) ....................................................................38

5 U.S.C. § 3105 .......................................................................35

5 U.S.C. § 4802(b) ..................................................................32

5 U.S.C. § 5311 .......................................................................35

5 U.S.C. § 5372 .......................................................................35

15 U.S.C. § 77u .......................................................................32

15 U.S.C. § 78d-1 ....................................................................35

15 U.S.C. § 78d-1(c) ................................................................40

15 U.S.C. § 78y ..................................................................13,17

15 U.S.C. § 78y(a)(1) ..........................................................*passim*

20 U.S.C. § 1234(b) .................................................................30

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1292(a) ...................................................................1

28 U.S.C. § 1331 ...............................................................1, 9, 13

28 U.S.C. § 1337 ........................................................................1

28 U.S.C. § 1346 ........................................................................1

28 U.S.C. § 1651 ........................................................................1

28 U.S.C. § 2106 .................................................................*passim*

28 U.S.C. § 2201 ....................................................................1, 9

35 U.S.C. § 6(a) .......................................................................30

8 C.F.R. § 1003.10 ...................................................................30

12 C.F.R. § 308.40 ...................................................................38

17 C.F.R. § 201.101(a)(5) .........................................................33

17 C.F.R. § 201.110 .................................................................33

17 C.F.R. § 201.111 ................................................................... 35-36

17 C.F.R. § 201.161(b) ...................................................................8

17 C.F.R. § 201.180 .......................................................................36

17 C.F.R. § 201.320 .......................................................................36

17 C.F.R. § 201.320(b) ...................................................................39

17 C.F.R. § 201.320(d)(1) ...............................................................39

17 C.F.R. § 201.360(b) ...................................................................39

17 C.F.R. § 201.360(b)(1) ..........................................................38, 39

17 C.F.R. § 201.360(d) ...................................................................39

17 C.F.R. § 201.360(d)(1) ...............................................................39

17 C.F.R. § 201.360(d)(2) ..........................................................38, 39

17 C.F.R. § 201.410(b) ...................................................................39

17 C.F.R. § 201.411(c) ...............................................................38, 39

11A Charles A. Wright *et al.*, *Federal Practice and Procedure*
§ 2948.1 (2d ed. 1995)................................................................ 21-22

Department of Justice Office of Legal Counsel, *Officers of the United
States Within the Meaning of the Appointments Clause*
(Apr. 16, 2007) ...........................................................................41

Jean Eaglesham, *SEC Wins With In-House Judges*, Wall St. J.,
May 6, 2015 ...................................................................................3

Letter to Hon. Richard Berman, *Duka v. SEC*, No. 1:15-cv-00357-RMB
(S.D.N.Y. filed June 15, 2015) ......................................................43

Stephanie Russell-Kraft, *Concerns Grow With Size Of SEC Admin Law
Office*, Law360 (July 1, 2014, 7:34 PM) ........................................7

U.S. Securities and Exchange Commission, Office of Administrative Law
Judges: About the Office ...............................................................34

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC (collectively, "Patriarch") appeal from an Opinion and Order of June 30, 2015 (A-132-154),[1] of the United States District Court for the Southern District of New York (Abrams, J.), denying their motion for a preliminary injunction and dismissing the case for lack of federal subject matter jurisdiction.

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, and 2201. Patriarch filed a timely notice of appeal on July 1, 2015. (A-155-156). This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the Opinion and Order constituted a final order, and under 28 U.S.C. § 1292(a) because the Opinion and Order denied a motion for a preliminary injunction. This Court granted Patriarch's motion for an expedited appeal. (Order, July 9, 2015, ECF No. 22).

## ISSUES PRESENTED

I.  Whether the federal courts have federal question jurisdiction to determine if Administrative Law Judges of the United States Securities and

---

[1]  Citations are as follows: "A-" refers to the Appendix.

Exchange Commission ("SEC ALJs") are inferior officers of the United States within the meaning of the Appointments Clause of the U.S. Constitution, U.S. Const. art. II, § 2, cl. 2.

II.    Whether SEC ALJs are inferior officers within the meaning of the Appointments Clause.

III.    Whether this Court should address the merits of the Appointments Clause claim and order appropriate relief, including enjoining the trial before the SEC ALJ scheduled for October 13, 2015.

## PRELIMINARY STATEMENT

Through Patriarch Partners, LLC and its affiliates, Lynn Tilton runs one of the largest woman-owned businesses in the United States. Her personal reputation and pivotal role at Patriarch are integral to dozens of portfolio companies, tens of thousands of American jobs, and more than two billion dollars of outstanding investor notes. The U.S. Securities and Exchange Commission ("SEC") investigated Patriarch for more than five years. On March 30, 2015, a bare majority of the SEC Commissioners – by a 3-2 vote – ordered an administrative trial before an SEC ALJ (who will act as finder of both fact and law) to determine whether there have been violations of the securities laws. The trial is scheduled to begin October 13,

2

2015.[2]

But no trial can be valid if the judge presides without lawful authority. For this reason, the Supreme Court has held that where a judge serves in violation of the Appointments Clause of the Constitution, the error is "structural," with resulting constitutional harm regardless of how the proceeding is otherwise conducted. *See Freytag v. Comm'r*, 501 U.S. 868, 878-90 (1991). Here, SEC ALJs have not been appointed by the SEC Commissioners as constitutionally required. The first and only federal court to reach the merits of this important question exercised federal question jurisdiction and enjoined an unlawful trial before an SEC ALJ. *See Hill v. SEC*, No. 15-01801-LMM, slip op. at 41 (N.D. Ga. June 8, 2015), *appeal pending*, No. 15-12831 (11th Cir.) (A-87-131).

The district court below (Abrams, J.) should have done the same. Instead, the district court erroneously disclaimed jurisdiction and dismissed Patriarch's complaint. (A-154). The district court misapplied decisions in which the Supreme Court and this Court have upheld jurisdiction over threshold questions of the SEC's authority, including the

---

[2]     From September 2013 through September 2014, the SEC won 100% of its ALJ trials. (A-30). Notably, a former SEC ALJ has alleged a systemic bias against defendants in SEC administrative proceedings. Jean Eaglesham, *SEC Wins With In-House Judges*, Wall St. J., May 6, 2015, at 4.

validity of SEC action under the Appointments Clause.  (A-132-154).  Judge Abrams acknowledged that other district judges have reached the opposite jurisdictional conclusion.  (A-137-138).

The crucial jurisdictional feature, here, is that the constitutional legitimacy of SEC ALJs turns on a question not requiring the development of a factual record, the exercise of agency discretion, or the application of a statute to particular facts.  It is settled that the SEC Commissioners themselves must appoint agency inferior officers under the Appointments Clause.  *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 512-13 (2010).  And the SEC concedes that the Commissioners have not appointed the SEC ALJs.  Thus, this case turns on one constitutional question: Is an SEC ALJ an "inferior Officer" under the Clause?  The SEC concedes that if the answer is yes, then Patriarch succeeds on the merits.

Yet the district court found that this dispositive constitutional question must be adjudicated administratively before review is available in federal court.  As a result, Patriarch faces a fast-approaching trial before an SEC ALJ that is projected to last three weeks but will add not one iota to resolution of the question presented here.  Next, an appeal to the Commission will be futile because the SEC has already adopted the

4

erroneous view, in this litigation and others, that its ALJs are mere employees not subject to the Appointments Clause. Finally, sometime in 2017 at the earliest, the parties would return to this Court on appeal from the Commission's final order incorporating its preordained conclusion that the Appointments Clause does not apply. Meanwhile, the administrative machinery will grind on under a cloud of error in this and other cases in this circuit, while halted on valid constitutional grounds in another jurisdiction. And Ms. Tilton and Patriarch will have to struggle for the survival of vital portfolio companies while defending themselves through an unconstitutional administrative process.

This prolonged uncertainty is needless because the threshold question of SEC ALJ legitimacy is ripe – and indeed cries out – for resolution now. This Court should find jurisdiction, conclude (as did the district court in *Hill*) that SEC ALJs have not been appointed as constitutionally required, and order appropriate relief, including an injunction halting the trial before the SEC ALJ.

## STATEMENT OF THE CASE

## I.    BACKGROUND

Ms. Tilton is the founder and CEO of Patriarch Partners, LLC. (A-35 at ¶ 1). Through her ownership of Patriarch and its affiliates, Ms.

Tilton has restructured and rebuilt many companies, including well-known American brands such as Rand McNally, Stila Cosmetics, Dura Automotive and MD Helicopters. (A-35 at ¶ 2; A-36 at ¶ 4). Patriarch's investment funds (collectively, the "Zohar Funds") were structured as collateral loan obligations, which raise cash by issuing debt to outside investors, known as noteholders. (A-36 at ¶ 5). The noteholders are the most sophisticated of institutional investors. *Id.*

The Zohar Funds' principal investment strategy, unique in its class, was to acquire deeply distressed companies, make loans to them, and implement a long-term turnaround strategy to build value for the funds and their noteholders. (A-36 at ¶ 6). In addition to Patriarch's role as the collateral manager of the Zohar Funds, Ms. Tilton also guides the management of these portfolio companies in her role as Manager and/or CEO of the portfolio companies, and Patriarch's affiliates provide operational and management services and work day-to-day on company business. (A-36-37 at ¶¶ 6-7). Thus, Ms. Tilton is crucial to the portfolio companies, their employees, and billions of investor dollars. (A-37 at ¶ 9).

## II.  THE SEC INQUIRY AND THE CHARGES

The SEC's Enforcement Division investigated Patriarch for more than five years, beginning with a document request issued in

6

December 2009, seeking information dating to 2000. (A-10-11 at ¶ 3). On October 4, 2014, the Staff of the Enforcement Division issued a Wells Notice outlining alleged violations of the Investment Advisor Act. (A-11 at ¶ 4). The heart of the Staff's theory was – and is – a hotly contested contractual interpretation of the Zohar Fund trust indentures, which the Staff claims required greater disclosure to noteholders.[3] (A-14-26).

In a Wells submission to the Commission, Patriarch explained why any enforcement proceeding should be filed in federal district court, rather than in an administrative proceeding.[4] (A-11 at ¶ 4). Patriarch argued that trial before an SEC ALJ would violate the Appointments Clause of Article II of the Constitution. *Id.* Patriarch also contrasted the Staff's five-year-plus investigation (with subpoena power) against a defense that would

---

[3] Such issues of contract interpretation, if disputed between the contracting parties, are not typically the subject of an SEC proceeding but rather are left to dispute resolution between sophisticated, well-financed parties.

[4] For its first 75 years, until the enactment of Dodd-Frank, the Commission could seek monetary penalties against a non-registered person such as Ms. Tilton only through an action in district court. The district court below noted "the SEC's decision to bring an ever increasing number of enforcement actions within its own administrative scheme, rather than in federal court." (A-90). Indeed, for this controversial new wave of agency enforcement, the Commission has nearly doubled the size of its ALJ staff. Stephanie Russell-Kraft, *Concerns Grow With Size Of SEC Admin Law Office*, Law360, (July 1, 2014, 7:34 PM), http://www.law360.com/articles/553604/concerns-grow-with-size-of-sec-admin-law-office.html.

have only months to prepare for trial before an SEC ALJ (without depositions or other traditional discovery).

On March 30, 2015, the Commission – by a narrow 3-2 vote – issued an Order Instituting Proceedings ("OIP"), commencing an administrative proceeding alleging violations of the federal securities laws. (A-28). Despite Patriarch's argument under the Appointments Clause, the Commission ordered a hearing before an SEC ALJ, who was directed to issue an initial decision within 300 days. (A-26). The trial before the SEC ALJ is to begin on October 13, 2015.[5] *In re Tilton*, Release No. 2647 (ALJ May 7, 2015) (prehearing order), http://www.sec.gov/alj/aljorders/2015/ap-2647.pdf.

## III. THE DISTRICT COURT PROCEEDINGS

On April 1, 2015, Patriarch filed this lawsuit in the Southern District of New York, seeking declaratory relief and an injunction halting the trial before the SEC ALJ on constitutional grounds, including its Appointments Clause claim. The Complaint invoked the district court's original jurisdiction over all civil actions arising under the Constitution or

---

[5]     Under the SEC's Rules of Practice, requests for adjournment of hearings are strongly disfavored. *See* SEC Rules of Practice, 17 C.F.R. § 201.161(b) (2015). Moreover, given the 300-day deadline for an initial decision, the ALJ's ability to adjourn the hearing without approval from the Commission to extend the deadline is limited. (A-26).

federal laws, 28 U.S.C. § 1331, and the district court's power to grant declaratory relief, 28 U.S.C. § 2201.

On April 15, 2015, Patriarch filed its motion for a preliminary injunction. In opposition, the SEC argued that the district court lacked jurisdiction. On the merits, the SEC argued that SEC ALJs are mere employees of the Commission, and do not qualify as inferior officers within the meaning of the Appointments Clause.

On May 11, 2015, the district court heard oral argument on Patriarch's motion. (A-41-86). In response to questions from the district court, the SEC conceded that the SEC ALJ assigned to Patriarch's case was not appointed by the SEC Commissioners. (A-65-66 at 25:22-26:3). The SEC also conceded that if the district court found the SEC ALJ to be an inferior officer within the meaning of the Appointments Clause, then Patriarch would likely succeed on the merits of its Appointments Clause challenge. (A-69 at 29:10-29:17). The district court reserved the decision. But the SEC's concessions had immediate impact elsewhere.

## IV. *HILL v. SEC*

On May 29, 2015, the Plaintiff in *Hill v. SEC* brought an Appointments Clause challenge in the Northern District of Georgia, attaching a transcript of the May 11th oral argument in the Southern District

9

of New York, described above. *See* Amended Complaint for Declaratory and Injunctive Relief, *Hill v. SEC*, No. 15-01801-LMM (N.D. Ga. filed May 29, 2015). The Plaintiff asked Judge Leigh Martin May to enjoin an imminent trial before an SEC ALJ. *Id.* On June 8, 2015, Judge May issued an opinion finding subject matter jurisdiction and granting the injunction. *See Hill*, No. 15-01801-LMM (A-87-131). Judge May found that SEC ALJs are inferior officers within the meaning of the Appointments Clause and that the Plaintiff had, accordingly, established a likelihood of success on his Appointments Clause claim. (A-127-128).

## V.   THE DECISION BELOW

On June 30, 2015, the district court issued a decision denying Patriarch's motion for a preliminary injunction. *See Tilton v. SEC*, No. 15-CV-2472 (RA) (S.D.N.Y. June 30, 2015) ("Order") (A-89-111). Rather than reach Patriarch's constitutional claim, the district court dismissed Patriarch's action for lack of federal subject matter jurisdiction. *Id.* The district court acknowledged that its jurisdictional conclusion differed from Judge May's decision in *Hill*, as well as the recent decision of Judge Berman of the Southern District of New York in *Duka v. SEC,* No. 15 Civ. 357 (RMB)(SN), 2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015). Order at 6-7 (A-94-95). This appeal followed.

10

## SUMMARY OF THE ARGUMENT

Patriarch has raised important constitutional claims regarding the legitimacy of the administrative proceedings brought against it by the SEC. The district court erred in dismissing those claims for lack of subject matter jurisdiction by misapplying the relevant jurisdictional statute and the factors considered in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). When correctly applied, the statute and *Free Enterprise* compel a finding of subject matter jurisdiction because of the collateral nature of Patriarch's claims, the lack of expertise on the part of the SEC to dispose of those claims, and the absence of any meaningful review within the administrative proceedings themselves.

Because this Court has jurisdiction over Patriarch's constitutional claims, it should reach the merits of those claims and enjoin the SEC's unconstitutional administrative proceedings. Under 28 U.S.C. § 2106, this Court has the authority to address the merits of Patriarch's claims, and has reached the merits of such claims in similar cases. *See*, *e.g.*, *Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 556-57 (2d Cir. 1978).

On the merits, the only substantive question to resolve is whether SEC ALJs qualify as inferior officers who must be appointed in the

11

way prescribed by the Appointments Clause of the Constitution. Given the substantial responsibilities of SEC ALJs, as well as binding decisions of the Supreme Court and this Court establishing that special trial judges exercising powers equivalent to those exercised by SEC ALJs in this case are inferior officers, this Court should find that SEC ALJs are also inferior officers who must be appointed by the Commissioners under the Appointments Clause. *See Freytag*, 501 U.S. at 868; *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 994 (2d Cir. 1991). As a result, Patriarch's trial before an SEC ALJ is unconstitutional and should be enjoined.

## ARGUMENT

### I. FEDERAL COURTS HAVE JURISDICTION TO DETERMINE THE THRESHOLD QUESTION OF WHETHER SEC ALJs ARE "OFFICERS" UNDER THE APPOINTMENTS CLAUSE

The district court acknowledged that Patriarch's "constitutional challenge [did] not pertain to 'any Commission orders or rules,' but rather the constitutionality of the proceedings generally." Order at 19 (citing *Free Enter.*, 561 U.S. at 490) (A-150). Under decisions of the Supreme Court and of this Court, such a threshold constitutional challenge to agency practice falls squarely within federal question jurisdiction and, because it does not pertain to a final agency order, is not subject to exclusive circuit court review. Thus, the district court erred by concluding that the Appointments

12

Clause claim was governed by 15 U.S.C. § 78y(a)(1), which provides that a person aggrieved by a "final order" of the Commission may obtain review of that order in a circuit court of appeals.

### A.   <u>Key Precedents</u>

<u>First</u>, in *Free Enterprise*, the Supreme Court upheld federal question jurisdiction over an Appointments Clause challenge to the SEC's appointments to the Public Company Accounting Oversight Board. *Free Enter.*, 561 U.S. at 491. The Supreme Court held that § 78y did not establish an "exclusive route to review" because it neither expressly nor implicitly "limit[ed] the jurisdiction that other statutes confer on district courts," such as 28 U.S.C. § 1331. *Id.* at 489. The district court sought to distinguish *Free Enterprise* on the sole ground that the Plaintiff there was not yet the subject of an SEC administrative proceeding. Order at 20-21 (A-151-152). But the specifics of Patriarch's administrative proceeding have no bearing on its Appointments Clause challenge. Because Patriarch's claim applies to any trial before an SEC ALJ, an administrative adjudication offers nothing to the threshold constitutional analysis. *Free Enterprise*, therefore, is controlling authority for the exercise of federal question jurisdiction over Patriarch's Appointments Clause claim.

13

Second, the Supreme Court's statutory analysis in *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991), compels a finding of subject matter jurisdiction here. In *McNary*, the Supreme Court found that where an immigration statute provided review for "a determination" respecting an immigration application – similar in nature to the "final order[s]" referred to in § 78y(a)(1) – that language did not preclude the district court's jurisdiction over constitutional challenges to the "practices and policies" of the agency. *Id.* at 491-94; *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56 (1983) (holding that where statute specifically provided for review of a "denial" of an application, jurisdiction was not precluded for challenge to general legality of regulation). The Supreme Court found that if Congress had wanted to preclude jurisdiction for such challenges, it could have used broader statutory language that provided for review of "all questions of law and fact" related to the immigration program at issue. *McNary,* 498 U.S. at 494. Because Congress chose narrower language, the Supreme Court found that the district court's federal question jurisdiction to hear constitutional challenges to INS procedures "remain[ed] unimpaired." *Id.* The same is true here: In limiting the relevant review provision to "final orders" of the Commission, Congress did not channel jurisdiction away from district courts with regard to constitutional challenges

14

to the SEC's "practice" of using unappointed ALJs to adjudicate its administrative proceedings. *See, e.g., G.E. Co. v. Jackson*, 610 F.3d 110, 124-27 (D.C. Cir. 2010) (holding that "claims falling outside the text of a jurisdiction-channeling provision . . . may proceed in the district court," and that district court had jurisdiction over challenge to GE's practices because text of statute only addressed the review of "orders," not practices); *Cent. Hudson Gas*, 587 F.2d at 556-57 (finding jurisdiction where plaintiff's challenge was outside the text of the applicable jurisdiction-channeling provision).

For this same reason, the district court's reliance on *Altman v. SEC*, 687 F.3d 44 (2d Cir. 2012), was misplaced. *See* Order at 5-6 (citing *Altman*, 687 F.3d at 45-46) (A-136-137). In *Altman*, the plaintiff tried to challenge a "final SEC order," and thus the language of § 78y(a)(1) directly applied to channel review away from the district court. *Altman,* 687 F.3d at 45-46. Because Patriarch does not challenge a final SEC order, but rather a threshold practice, *Altman* is inapposite.

Third, in *Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979), this Court held that the district court had erred in dismissing on jurisdictional grounds a federal question challenge to the SEC's statutory authority to conduct accountant disciplinary proceedings. It reasoned that

15

the issue was purely one of statutory interpretation and would not have benefitted from factual development or the application of agency expertise through an administrative proceeding. *Id.* at 577. On the same basis, *Touche Ross* affirmed the dismissal of other claims that would have benefitted from administrative adjudication in the first instance. *Id.* at 574-75 (finding that claims of Commission bias could not be reviewed until agency had made an adverse determination and an appeal had been taken "on the record as a whole"). Accordingly, *Touche Ross* illustrates why limiting the exclusive review scheme of § 78y(a)(1) to "final order[s]" will not result in undue district court litigation. Challenges made in district court to non-final SEC orders generally will require exhaustion of administrative remedies whenever the issue will benefit from development of a factual record or exercise of agency discretion or expertise, which will often be the case. *See Chau v. SEC*, ___ F. Supp. 3d ___, 2014 WL 6984236, at *9 (S.D.N.Y. Dec. 11, 2014) (finding that district court jurisdiction is less likely where pre-enforcement constitutional claim "relates to factual issues"). However, like the statutory interpretation issue in *Touche Ross*, Patriarch's Appointments Clause claim requires no factual development or application of agency expertise.

16

**B.    The *Thunder Basin* Considerations**

In *Free Enterprise*, the Supreme Court included in its analysis a review of the three considerations articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994), to determine whether district court jurisdiction is precluded.    *Free Enter.*, 561 U.S. at 489.    Those considerations are: (1) whether "a finding of preclusion could [have] foreclose[d] all meaningful judicial review"; (2) whether the suit was "wholly collateral to a statute's review provisions"; and (3) whether the claims were "outside the agency's expertise."  *Free Enter.*, 561 U.S. at 489 (quotation marks omitted) (citing factors promulgated).

**1.  No Opportunity for Meaningful Review**

In *Free Enterprise*, the Supreme Court considered not whether denying district court jurisdiction could preclude *all* judicial review, but rather, whether such a denial would preclude all "meaningful" judicial review.  *Id.*  Under the review procedures delineated in § 78y, Patriarch would not be able to seek review in federal court of the constitutionality of the SEC's ALJ practices until after the challenged trial before the SEC ALJ, and after review of the trial on appeal to the Commission.  *See* 15 U.S.C. § 78y(a)(1).    Exhausting this procedure would deprive Patriarch of meaningful judicial review because it: (1) would be deprived of the

17

opportunity to obtain the relief that it seeks, and (2) would suffer at least two distinct injuries as a consequence.

Again, *Touche Ross*, is instructive.  This Court emphasized that declining federal question jurisdiction over the challenge to the SEC's statutory authority would have "require[d] [appellants] to submit to the very procedures which they [were] attacking."  609 F.2d at 577.[6]  This is not meaningful review.  *See Hill*, slip op. at 18-19 ("Waiting until the harm Plaintiff alleges cannot be remedied is not *meaningful* judicial review") (A-104-105); *Duka,* 2015 WL 1943245, at *5 ("If Plaintiff were required, as the Government urges, to await the completion of the Administrative Proceeding to seek (any) judicial intervention . . . her claim for injunctive and declaratory relief would likely be moot at that stage because the

---

[6]     The district court attempted to distinguish *Touche Ross* on the ground that its holding (*viz.* that exhaustion of remedies was not required) was inapplicable because Patriarch's "constitutional claims" were not "plainly beyond" the SEC's jurisdiction.  Order at 11-12 n.3 (A-142-143).  However, the district court erred in analyzing whether Patriarch's "claims" were beyond the SEC's jurisdiction rather than analyzing whether the proceeding itself was beyond the SEC's jurisdiction.  As noted in *Touche Ross*, this exception was derived from an earlier Second Circuit decision holding that: "[A]n injunction [against an administrative proceeding] may be issued 'if an agency refuses to dismiss *a proceeding* that is [p]lainly beyond its jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order.'"  609 F.2d at 576 (emphasis added) (quoting *Sterling Drug, Inc. v. Weinberger*, 509 F.2d 1236 (2d Cir. 1975)).  Here, the ALJ proceeding is "being conducted in a manner that cannot result in a valid order," because it is being conducted by an unconstitutionally appointed ALJ.

allegedly unconstitutional Administrative Proceeding would have already taken place"); *Gupta v. SEC*, 796 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2011) (finding review not meaningful where plaintiff "would be forced to endure the very proceeding" he was contesting).

Nor is judicial review meaningful if a litigant has to endure undue harm to vindicate her rights.  *See Free Enter.*, 561 U.S. at 490-91 (review not meaningful if litigant had to commit a violation to seek review). Here, the path to review envisioned by the district court is too onerous to be considered meaningful.

First, not only would Patriarch have to endure the very proceeding it was contesting, but Patriarch would likely have to endure another, separate adjudicatory proceeding.  If, following an ALJ trial (and Commission appeal), this Court ruled in Patriarch's favor on the Appointments Clause issue, the Commission would be free to initiate a second adjudicatory proceeding either in federal district court, or administratively under a reformed ALJ process.  Accordingly, Patriarch would be subjected to the "embarrassment, expense, . . . ordeal . . . [and] state of anxiety and insecurity" that is inherent in such proceedings, not once, but twice.  *Green v. United States*, 355 U.S. 184, 187 (1957); *see also Duka*, 2015 WL 1943245, at *5 (recognizing that the "'substantial litigation

19

and resource burdens incurred during [the] administrative proceeding,' and the 'reputational harm' associated with . . . defending the Administrative Proceeding" constitute harm relevant to the *Free Enterprise* analysis) (alteration in original) (citation omitted).  As other courts have recognized, a remedy that leads to duplicative proceedings is not an adequate or meaningful one.  *Cf. Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (recognizing "courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions"); *Lee v. Bickell*, 292 U.S. 415, 421 (1934) ("[W]e are not in doubt, the multiplicity of actions necessary for redress at law [is] sufficient . . . to uphold the remedy by injunction.").  Moreover, this Court has shown that it disfavors jurisdictional results that force parties to endure gratuitous proceedings, such as the ALJ proceeding here:

> If an administrative agency conducts proceedings over which it lacks jurisdiction, and the courts ultimately declare the proceedings a nullity, then the loss of time and expense to both the government and the defending party can be substantial. Thus, it may be desirable . . . to have some form of judicial review of the jurisdictional issue at an early stage of the proceedings.

*Cent. Hudson Gas*, 587 F.2d at 556 (finding district court retained subject matter jurisdiction despite ongoing administrative proceeding where same issue was raised).

20

Second, the review provided by the statute is not meaningful because it would first compel Patriarch, in particular Ms. Tilton, to sustain irreparable injury as a direct consequence of being subjected to an unconstitutional adjudicative procedure. As the Supreme Court explained in *Bond v. United States*, 131 S. Ct. 2355 (2011): "The structural principles secured by the separation of powers protect the individual . . . . If the constitutional structure of our Government that protects individual liberty is compromised, individuals . . . may object." *Id.* at 2365 (citing *Free Enterprise*, where Article II challenges were made, as an example of where "[a] cardinal principle of separation of powers was vindicated at the insistence of an individual"). As explained, *infra*, Sec. III, the SEC ALJ process here violates Ms. Tilton's right to a constitutional government structure, as well as injures her personally by subjecting her to a defective proceeding. As this Court and others have repeatedly found, such injuries are irreparable. *See Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("[Where] plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[A] presumption of irreparable injury . . . flows from a violation of constitutional rights."); 11A Charles A. Wright et al., *Federal Practice and Procedure* §

21

2948.1 (2d ed. 1995) ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'").

### 2. Wholly Collateral

The second of the *Thunder Basin* considerations likewise favors Patriarch. The test for whether a suit is "wholly collateral" is whether the appellant challenges any "orders or rules from which review might be sought" under the purportedly exclusive review scheme. *See Free Enter.*, 561 U.S. at 490. Because Patriarch here challenges the SEC's practice of having unappointed ALJs preside over administrative hearings, its challenge is "wholly collateral" to a review provision for "final orders." *Hill*, slip op. at 20-21 (finding Plaintiff's Article II claim was "wholly collateral" because he was not "challenging an agency decision," he was "challenging whether the SEC's ability to *make* that decision was constitutional" (citing *Free Enterprise*, 561 U.S. at 490)) (A-106-107); *Duka*, 2015 WL 1943245, at *6 (holding that Plaintiff's Article II challenge to the existence of the Administrative Proceeding was "'wholly collateral' to 'any Commission orders or rules from which review might be sought'" in the Court of Appeals (citing *Free Enterprise*, 561 U.S. at 489-90)). The SEC relied below on the Supreme Court's decision in *Elgin v. Department of Treasury*, 132 S. Ct.

22

2126 (2012).  But the district court properly distinguished *Elgin* because "[s]eeking to halt ALJ proceedings based upon alleged structural constitutional violations cannot reasonably be characterized as the 'regular' or 'routine' business of SEC administrative proceedings."  Order at 20 (A-151).

Nevertheless, the district court found it a "close question" whether Patriarch's challenge was "wholly collateral" because Patriarch had raised the authority of the SEC ALJ as an affirmative defense in its answer to the administrative complaint.  Order at 19-20 (A-150-151).  This was error.  Patriarch merely preserved a claim in its answer (as any litigant can be expected to do to avoid a claim of waiver), but never asserted that the ALJ proceeding was the appropriate forum to resolve that defense.  Indeed, the entire reason for filing an action in federal court was the inadequacy of the administrative forum to address Patriarch's constitutional claim.  Expecting Patriarch to raise the Appointments Clause claim solely before the ALJ would violate due process because the SEC ALJ would be asked to rule on her own professional fate.  *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 876 (2009) ("No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment.") (citation omitted).

23

### 3. Outside Agency's Expertise

Patriarch's claims easily satisfy the third prong of the *Free Enterprise* analysis, which asks whether an appellant's claims are "outside the agency's expertise." Here, as in *Free Enterprise*, Patriarch raises constitutional challenges under Article II to the SEC's practices. In *Free Enterprise*, the Supreme Court held that such "constitutional claims [were] also outside the Commission's competence and expertise." 561 U.S. at 478. Indeed, even the district court here recognized that "the particular constitutional questions [in this case] may not be within the SEC's expertise." Order at 21 (A-152).

## II. THIS COURT SHOULD ADDRESS THE MERITS OF THE APPOINTMENTS CLAUSE CLAIM AND ORDER RELIEF

### A. <u>The Pure Legal Question Does Not Require Remand</u>

This Court has jurisdiction to hear Patriarch's claims, and should rule on the merits of those claims rather than remand to the district court. Under 28 U.S.C. § 2106, "any . . . court of appellate jurisdiction may . . . direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106. The factual record here is complete and the relevant legal issues were fully briefed below, such that there would be no benefit to remanding to the district court. On the contrary, the time-sensitive nature of

24

Patriarch's claims weighs in favor of this Court addressing the merits of this important constitutional issue and ordering appropriate relief now.

Under indistinguishable circumstances, this Court in *Central Hudson Gas* considered the merits of a case that had been dismissed by the district court for lack of subject matter jurisdiction. *See* 587 F.2d at 557-58. The district court had evaluated claims brought by a New York power company against the Environmental Protection Agency, and ultimately determined that it lacked jurisdiction over the power company's claims due to an exclusive jurisdictional scheme established by Congress. *Id.* at 555-57. This Court disagreed, and held that it could properly exercise subject matter jurisdiction over appellant's claims and reach the merits of those claims as well. *Id.* at 557. Citing to its authority under 28 U.S.C. § 2106, this Court held that:

> The only issue involved in this case is one of law; there are no genuine issues of material fact. Both sides moved for summary judgment in the district court, and the issue has been fully briefed and argued both here and in the district court. As explained below, delay may affect not only the parties, but may also have a significant adverse impact on the public interest. Accordingly, it is just under the circumstances for this Court to consider issues not reached by the district court.

*Id.* at 557-58; *see, e.g.*, *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 124 (2d Cir. 1987) (stating that "a task [normally] within the discretion of a district court" could be decided by the appellate court where

25

"resolv[ing] issues normally decided by lower courts . . . [would] bring protracted litigation to a close"); *see also Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 516 F.2d 172, 186 (2d Cir. 1975) (determining the proper level of damages rather than remanding to the district court because "[t]o remand the case in the light of such a prospect would be a waste of judicial manpower"), *rev'd on other grounds by Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1 (1977).[7]

### B.    Completeness of the Factual Record

Citing considerations of judicial economy, appellate courts frequently rely on the completeness of the factual record and the legal nature of the claims at issue when deciding whether to address issues not adjudicated by the district court rather than remanding.  Thus, in *Central Hudson Gas*, this Court noted that "[t]he only issue involved in this case is

---

[7]    Other circuits have similarly invoked § 2106.  For example, in the context of the appellate review of a preliminary injunction, the Seventh Circuit has held that "[w]hen the appeal from a preliminary injunction brings up dispositive issues of law that can be decided without a trial, the sensible course is to convert the preliminary-injunction proceeding into a permanent-injunction proceeding and go directly to the merits.  We have done this frequently."  *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1394 (7th Cir. 1992) (citing cases) (Posner, J.); *see also Doe v. Sundquist*, 106 F.3d 702 (6th Cir. 1997) ("If an issue unaddressed by the district court, is presented with sufficient clarity and completeness and its resolution will materially advance the progress of the litigation . . . we have often chosen to consider that issue." (citations omitted)).

one of law," that "no genuine issues of material fact" remained for the district court to review, and that "the issue has been fully briefed and argued both here and in the district court." 587 F.2d at 557-58. Similarly, in *Chris-Craft*, this Court concluded that to remand the case to the district court would constitute "a waste of judicial manpower" given that the case could be decided by this Court "on the basis of the record now before us." 516 F.2d at 186-87.

In such cases, appellate courts have recognized that in the absence of any necessary additional fact-finding, the appellate court itself can save time and resources by deciding the ultimate merits at stake. Here, there are no additional facts that require development by the district court to assist with its decision. During oral argument, Judge Abrams specifically asked counsel for both parties whether any "facts are needed at this stage for [the district court] to rule on this motion." (A-44 at 4:2-3; A-58 at 18:12-13). Counsel for both parties responded that no additional facts beyond those already in the record were necessary. (A-44 at 4:8-13; A-58 at 18:11-15).

### C. The Pure Legal Issue Needs To Be Addressed by this Court Eventually

It would be a clear waste of judicial resources for this Court to remand to the district court for a decision on the merits, with the strong probability that the district court's decision will be appealed by the losing

27

party to arrive once again on this Court's docket for a decision. This was precisely the reason this Court gave in *Chris-Craft* for its decision to resolve the merits of plaintiffs' claims in that case:

> We have no doubt that, given the tenacity of both sides, a remand would result in still another appeal some two years hence. The ultimate determination of the [merits of the case] would be made by us on the basis of essentially the same record now before us.

*Chris-Craft Indus.*, 516 F.2d at 186.

### D.     Delay Will Harm the Parties and the Public Interest

Absent a decision on the merits of its claims, Patriarch will be forced to continue preparing for trial in the administrative proceeding currently scheduled for October 13, 2015. Given this expedited schedule, unless this Court rules on the ultimate merits of Patriarch's claims, there is a strong possibility that no decision will be issued by this Court by the time that the trial occurs, precluding the remedies sought by Patriarch in this litigation. Because the record before this Court is complete and fully briefed by the parties, a decision on the merits, based on the authority granted by 28 U.S.C. § 2106, is warranted.

Equally, a delay in a final resolution of these issues will increase the confusion in numerous jurisdictions regarding the claims raised by Patriarch, resulting in a "significant adverse impact on the public interest"

that weighs in favor of this Court reaching the merits of the underlying claims. *Cent. Hudson Gas*, 587 F.2d at 557-58. Numerous cases raising similar issues regarding the constitutionality of SEC administrative proceedings are pending in district courts across the country.[8] As Judge Berman observed, "[Y]ou have all of these cases all over the country and a little bit of chaos right now . . . ." Tr. of Hr'g at 16:3-4, *Duka v. SEC*, No. 15 Civ. 357 (RMB) (S.D.N.Y. June 17, 2015). This Court should provide much-needed clarity now on an issue bound to arise over and over again. This is particularly true in this Circuit, which historically has had a docket replete with complex securities cases likely to raise issues identical to those here.

---

[8]     In addition to the Appointments Clause claims under review by Judge Berman in *Duka* and the appellate review of *Hill* by the Eleventh Circuit, similar issues are being raised in front of this Court in *Chau*. *See* Notice of Appeal, *Chau v. SEC*, No. 1:14-cv-01903-LAK (S.D.N.Y. Feb. 13, 2015). The same issues are pending in front of the Seventh Circuit. *See* Notice of Appeal, *Bebo v. SEC*, No. 2:15-cv-00003-RTR (E.D. Wis. Mar. 10, 2015). Decisions are also pending at the district court level. *See* Complaint, *Gray Financial Group, Inc. v. SEC*, No. 1:15-cv-00492-LMM (N.D. Ga. Feb. 19, 2015); Complaint, *Timbervest, LLC v. SEC*, No. 1:15-cv-02106-LMM (N.D. Ga. June 12, 2015); Complaint, *Ironridge Global IV, Ltd. v. SEC*, No. 1:15-cv-02512-LMM (N.D. Ga. July 14, 2015).

III.    THE COURT SHOULD ORDER A PERMANENT
        INJUNCTION TO ENJOIN THE SEC's ADMINISTRATIVE
        PROCEEDING

   A.    <u>The SEC ALJ Presiding Over the Administrative
         Proceedings Against Patriarch Was Not Appointed in a
         Manner Consistent with the Appointments Clause</u>

         The Appointments Clause of Article II provides that:

[The President] shall nominate, and by and with the Advice and
Consent of the Senate, shall appoint Ambassadors, other public
Ministers and Consuls, Judges of the supreme Court, and all
other Officers of the United States, whose Appointments are
not herein otherwise provided for, and which shall be
established by Law: *but the Congress may by Law vest the
Appointment of such inferior Officers, as they think proper, in
the President alone, in the Courts of Law, or in the Heads of
Departments.*

U.S. Const., art. II, § 2, cl. 2 (emphasis added).

         As such, inferior officers can only be appointed by a limited set

of Executive Branch officials, including the Commission, which constitutes

a "Head of Department" for purposes of the Appointments Clause.  *See Free

Enter.*, 561 U.S. at 512-513.  Administrative law judges in other agencies are

appointed consistent with the Appointments Clause, including, for example,

Immigration Court judges, who are appointed by the Attorney General

acting as the "Head" of the Department of Justice, *see* 8 C.F.R. § 1003.10,

and ALJs within the Department of Education, who are appointed by the

Secretary of Education.   20 U.S.C. § 1234(b); *see also*, 35 U.S.C. § 6(a)

("The administrative patent judges shall be persons . . . who are appointed by

the Secretary [of Commerce] . . ."); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012) (Copyright Royalty Judges properly appointed by the Librarian of Congress as a "Head of Department").

Yet the SEC concedes that SEC ALJs – including the SEC ALJ presiding over the proceedings against Patriarch – have not been appointed by the Commissioners.   (A-65-66 at 25:22-26:3).[9]   The only remaining argument available to the SEC is that SEC ALJs do not constitute inferior officers for purposes of Article II, but are "mere employees" who perform tasks similar to "corrections officers, human resources specialists, and paralegals."  (A-40).  As demonstrated below, that argument is unavailing.[10]

---

[9]     *See also Hill*, slip op. at 41 ("The SEC concedes that Plaintiff's ALJ, James E. Grimes, was not appointed by an SEC Commissioner.") (A-127); Notice of Filing at 2, *In re Timbervest, LLC*, No. 3-15519 (SEC filed June 4, 2015) (providing details about how SEC ALJs are hired by the Commission's Office of Administrative Law Judges without any input from the Commission itself).

[10]     Patriarch also challenged the fact that SEC ALJs enjoy more than one level of tenure protection, which is also prohibited by Article II.  *See Free Enter.*, 561 U.S. at 477-78.  Although Patriarch preserves that claim, this brief addresses the Appointments Clause claim in light of the SEC's concession that Patriarch likely succeeds on the merits if SEC ALJs are inferior officers under the Appointments Clause.

31

**B.**     **SEC ALJs Exercise "Significant Authority," Rendering Them Inferior Officers for Purposes of Article II**

The restrictions imposed by the Appointments Clause apply to any officer who exercises "significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). This includes officers whose responsibilities are "'predominantly quasi judicial,'" as well as those who are intended to remain independent of the Executive Branch with respect to their ordinary functions. *Id.* at 276 (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935)).

Nothing so well demonstrates the significance of the authority held by SEC ALJs than the fact that, in their absence, many of their duties and responsibilities would have to be fulfilled by the Commissioners themselves, under relevant statutes. *See*, *e.g.*, 15 U.S.C. § 77u ("All hearings shall be public and may be held before the Commission or an officer or officers of the Commission designated by it . . .").

Moreover, while the SEC characterizes SEC ALJs as mere employees for purposes of this litigation, throughout both the securities laws and the rules and regulations promulgated by the SEC itself, SEC ALJs are repeatedly and uniformly characterized as "officers" rather than employees, reflecting their significant role within the SEC's regulatory structure. *See, e.g., id.* (referring to SEC ALJs as "officers"); 5 U.S.C. § 4802(b) ("The

32

Commission may appoint . . . such *officers* . . . as may be necessary for carrying out its functions . . . ." (emphasis added)); 17 C.F.R. § 201.101(a)(5) (2015) ("*Hearing officer* means an administrative law judge, a panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or any other person duly authorized to preside at a hearing." (emphasis added)); 17 C.F.R. § 201.110 (2015) ("All proceedings shall be presided over by the Commission or, if the Commission so orders, by a hearing officer.").  The SEC can point to no regulation in which SEC ALJs are referred to as "employees" rather than "officers."

The SEC strains credulity by comparing the responsibilities of SEC ALJs to those of paralegals and corrections officers.  On its website, the SEC paints a very different picture:

> *Administrative Law Judges are independent judicial officers* who in most cases conduct hearings and rule on allegations of securities law violations initiated by the Commission's Division of Enforcement.  *They conduct public hearings* at locations throughout the United States *in a manner similar to non-jury trials in the federal district courts*.  Among other actions, *they issue subpoenas, conduct prehearing conferences, issue defaults, and rule on motions and the admissibility of evidence*.  At the conclusion of the public hearing, the parties submit proposed findings of fact and conclusions of law.  The Administrative Law Judge prepares an Initial Decision that includes factual findings, legal conclusions, and, where appropriate, orders relief.

33

The Commission may seek a variety of sanctions through the administrative proceeding process. *An Administrative Law Judge may order sanctions that include suspending or revoking the registrations of registered securities*, as well as the registrations of brokers, dealers, investment companies, investment advisers, municipal securities dealers, municipal advisors, transfer agents, and nationally recognized statistical rating organizations. In addition, *Commission Administrative Law Judges can order disgorgement of ill-gotten gains, civil penalties, censures, and cease-and-desist orders* against these entities, as well as individuals, and can suspend or bar persons from association with these entities or from participating in an offering of a penny stock.

U.S. Securities and Exchange Commission, Office of Administrative Law Judges: About the Office, http://www.sec.gov/alj (last visited July 16, 2015) (emphases added); *see also Butz v. Economou*, 438 U.S. 478, 513 (1978) ("There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of [an Article III] judge. His powers are often, if not generally, comparable to those of a trial judge: he may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions.").

## C.    SEC ALJs Are Indistinguishable from Other Judges Who Are Deemed "Officers"

The SEC ALJs exercise powers that cannot be distinguished from those of other judges who have been found by the Supreme Court and this Court to be inferior officers for purposes of Article II.

34

The Supreme Court in *Freytag v. Commissioner of Internal Revenue* held that special trial judges appointed by the Tax Courts are inferior officers and cited a list of powers exercised by the special trial judges that compelled this decision. 501 U.S. at 880-82. The elements listed by the Supreme Court with respect to special trial judges demonstrate that they are indistinguishable from SEC ALJs. The Supreme Court found that "the office of special trial judge is 'established by law' . . . [and] the duties, salary, and means of appointment for [special trial judges] are specified by statute." 501 U.S. at 881 (citations omitted). The same is true for SEC ALJs. *See* 5 U.S.C. § 556; 15 U.S.C. § 78d-1 (establishing the position of SEC ALJs); 5 U.S.C. §§ 556(c), 557 (setting forth responsibilities and powers of administrative law judges under the Administrative Procedure Act); 5 U.S.C. §§ 5311, 5372 (governing the salaries available to administrative law judges); 5 U.S.C. § 3105 (governing the appointment of administrative law judges by federal agencies). Regarding the responsibilities performed by special trial judges, the Supreme Court found that they were authorized to take sworn testimony, to conduct trials, and to rule on the admissibility of evidence. *Free Enter.*, 501 U.S. at 881-82. Again, the same is true of SEC ALJs. *See* 5 U.S.C. § 556(c)(1), (4) (providing that SEC ALJs can take testimony); 17 C.F.R. §

35

201.111 (2015) (providing that SEC ALJs can conduct trials); 17 C.F.R. §

201.320 (2015) (providing that SEC ALJs can rule on the admissibility of

evidence); 17 C.F.R. § 201.180 (2015) (providing that SEC ALJs can punish

"[c]ontemptuous conduct").

Similar factors were considered by this Court when evaluating

the status of the same special trial judges in *Samuels, Kramer & Co.*, 930

F.2d at 985-86, which was favorably cited by the Supreme Court in *Freytag*.

501 U.S. at 881. Both decisions comport with the Supreme Court's earlier

description of the powers exercised by an administrative law judge as

"'functionally comparable' . . . to those of a [federal] trial judge." *Butz*, 438

U.S. at 513.[11]

No court that has applied the ruling in *Freytag* to SEC ALJs has

determined that SEC ALJs fail to qualify as inferior officers. The district

---

[11] Indeed, every Supreme Court decision evaluating the status of Executive Branch officials who perform functions similar to those of a trial court judge has held that such officials are inferior officers for purposes of Article II. For example, in a series of three cases, the Supreme Court held that the judges presiding over military tribunals are inferior officers. *See, e.g.*, *Weiss v. United States*, 510 U.S. 163, 169 (1994) ("The parties do not dispute that military judges, because of the authority and responsibilities they possess, act as 'Officers' of the United States." (citing *Freytag*, 501 U.S. 868; *Buckley*, 424 U.S. at 126)); *Edmond v. United States*, 520 U.S. 651, 661-63 (1997) (evaluating whether military judges qualify as "principal" or "inferior" officers for purposes of Article II); *Ryder v. United States*, 515 U.S. 177, 180 (1995) (acknowledging lower court's determination "that appellate military judges are inferior officers").

36

court in *Hill* based its order issuing a preliminary injunction on its finding that SEC ALJs are inferior officers. *Hill,* slip op. at 37-38 (applying *Freytag*, 501 U.S. at 880-82) (A-121-127). In his decision in *Duka*, Judge Berman noted that "[t]he Supreme Court's decision in *Freytag* . . . would appear to support the conclusion that SEC ALJs are also inferior officers." *Duka*, 2015 WL 1943245, at *16. Even the district court in *Bebo*, dismissing plaintiff's claims on jurisdictional grounds, nonetheless described those claims as "compelling and meritorious." *Bebo v. SEC*, 15 Civ. 3, 2015 WL 905349, at *2 (E.D. Wis. Mar. 3, 2015), *appeal filed*, No. 15-1511 (7th Cir. Mar. 10, 2015).[12]

### D.  **The Finality of SEC ALJ Decisions**

The SEC can cite no case supporting its view that SEC ALJs are not inferior officers based on their substantial authority. Previously, the SEC has cited to *Landry v. FDIC*, a case outside this Circuit where the court relied on an alternative basis provided by the Supreme Court for its decision in *Freytag* to hold that inferior officers must have the authority to issue a

---

[12]  The position that administrative law judges constitute inferior officers has also been supported by a majority of the active members of the Supreme Court. *See Free Enter.*, 561 U.S. at 542 (Breyer, J. dissenting, joined by Ginsburg and Sotomayor, JJ.); *Freytag*, 501 U.S. at 910 (1991) (Scalia, J. concurring, joined by Kennedy, J.) ("[ALJs] are all executive officers" (emphasis omitted)).

final decision in order to be subject to the requirements of Article II. 204 F.3d 1125, 1133 (D.C. Cir. 2000). Yet SEC ALJs do in fact issue initial decisions that can become the final decision of the Commission under both internal regulations and statutory provisions of the Administrative Procedure Act, without the need for any further review by the Commission. Furthermore, Supreme Court and Second Circuit precedent provide that the finality of the decision by an ALJ is not dispositive on whether that ALJ exercises "significant authority" or is subject to the limitations imposed by the Appointments Clause.

### 1.  SEC ALJs Issue Final Decisions for the Commission

Under the relevant provisions of the APA, an SEC ALJ is authorized to issue an "initial decision" that "becomes the decision of the [Commission] without further proceedings" unless the Commission affirmatively decides to review the decision in question. 5 U.S.C. § 557(b). Similarly, the SEC's Rules of Practice provide that the Commission is not required to review an initial decision issued by an SEC ALJ, and that if the Commission declines to do so, the initial decision will be promulgated by the Commission as a final decision. 17 C.F.R. §§ 201.360(b)(1), (d)(2), 201.411(c) (2015). While review of the decisions of the FDIC ALJs at issue in *Landry* was mandatory, 12 C.F.R. § 308.40 (2015), here the SEC's own

38

internal rules make it clear that review of decisions of SEC ALJs by the Commission is purely discretionary. 17 C.F.R. § 201.360(b)(1), (d)(2).

In reality, under SEC Rule 360(d), the SEC ALJ issuing an initial decision herself sets the time limit during which a litigant is allowed to file a petition for review, which in turn sets the time limit under which the Commission is permitted to decide whether or not to review that decision on its own initiative. *See* 17 C.F.R. §§ 201.360(b), (d)(1), 201.410(b), 201.411(c). If the Commission does not affirmatively decide to review the decision within the time limit set by the SEC ALJ, then the initial decision automatically becomes the final decision of the Commission. While the Commission does publish a notice that the initial decision has become final, that notice consists of boilerplate language in the majority of cases that the initial decision "has become the final decision of the Commission." *See*, *e.g.*, *In re Vision Specialist Group, LLC*, No. 3-15920, 2014 WL 4827686, at *1 (Sept. 30, 2014). Importantly, this boilerplate notice includes the assertion that "the Commission has not chosen to review the decision on its own initiative," *id.*, but does not indicate whether the Commission has undertaken any preliminary review of the SEC ALJ's decision, or has affirmatively decided not to review it. Once this process is complete, the federal securities laws provide that "the action of [the] . . . administrative

law judge . . . shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission."  15 U.S.C. § 78d-1(c).  The mere fact that the Commission issues a piece of paper informing the public that an SEC ALJ's decision has become the final decision of the Commission cannot be the critical factor in determining whether SEC ALJs qualify as inferior officers for purposes of constitutional analysis.  The focus must be on the significant powers exercised by SEC ALJs – which determine the outcome for litigants in the vast majority of cases – rather than the purely ministerial role played by the Commission in the process in many of its cases.

### 2.  Supreme Court and Second Circuit Precedent Contradict the SEC's Broad Reading of *Landry*

Even if this Court were to decide that SEC ALJs do not issue final decisions on behalf of the Commission, SEC ALJs would nonetheless qualify as inferior officers for purposes of the Appointments Clause.  Although the SEC claims that the decision in *Landry* has implications beyond the specific context provided by FDIC ALJs at issue in that case, the Solicitor General explicitly rejected that argument in opposing *certiorari*:

> The court's decision directly addresses the constitutional status only of the ALJ (one of the two administrative law judges employed by OTS and assigned by OFIA) who presided at the administrative hearing in this case.  *The court of appeals did not purport to establish any categorical rule that administrative law judges are employees rather than "inferior Officers" for purposes of the Appointments Clause.*

40

Brief for Respondent in Opposition, *Landry v. FDIC*, No. 99-1916, 2000 WL 34013905, at *7 (U.S. Aug. 28, 2000) (emphasis added). In guidance for the Department of Justice directly addressing the status of officers under the Appointments Clause, the Office of Legal Counsel went even further, stating that "independent discretion is not a necessary attribute of delegated sovereign authority." *Officers of the United States Within the Meaning of the Appointments Clause* (Apr. 16, 2007) (quotation marks omitted).[13] Based on these prior pronouncements by the government, the SEC's argument here that *Landry* should be interpreted broadly should be rejected.[14]

The reason that the Solicitor General and the Office of Legal Counsel declined to argue for the broad reading of *Landry* as urged by the SEC is clear: Such a reading is directly contradicted both by *Freytag* and by *Samuels, Kramer & Co*., which explicitly considered and rejected this possibility. The Supreme Court in *Freytag* summarized and rejected

---

[13] *Available at* http://www.justice.gov/sites/default/files/olc/opinions/ 2007/04/31/appointmentsclausev10.pdf.

[14] The Supreme Court itself declined to endorse the holding in *Landry* in a footnote to its decision in *Free Enterprise*, 561 U.S. at 507 n.10, while the dissenters flatly rejected the conclusions of the D.C. Circuit in that case. *Id.* at 514 (Breyer, J., dissenting) (quoting *Freytag*, 501 U.S. at 910 ("[administrative law judges] are all executive officers") (Scalia, J., concurring in part and concurring in the judgment)).

41

arguments along these lines made by the government, noting that: "The Commissioner reasons that special trial judges may be deemed employees . . . because they lack authority to enter a final decision. *But this argument ignores the significance of the duties and discretion that special trial judges possess*." 501 U.S. at 881 (emphasis added). This Court in *Samuels, Kramer & Co.* was even more emphatic in rejecting such arguments:

> Although the ultimate decisional authority in [certain classes of cases] rests with the Tax Court judges [rather than the special trial judges], the special trial judges do exercise a great deal of authority in such cases . . . . They exercise a great deal of discretion and perform important functions, characteristics that we find to be inconsistent with the classifications of "lesser functionary" or mere employee.

930 F.2d at 985-86.

These decisions, not *Landry*, are the binding precedent in this Court. Most recently, the broad reading of *Landry* promoted by the SEC was rejected by the district court in *Hill*, which found that the powers exercised by the special trial judges in *Freytag* were "nearly identical to the SEC ALJs here," and that "the [special trial judge]'s limited authority to issue final orders was only an additional reason, not the reason" that the Supreme Court determined that these judges were inferior officers for purposes of the Appointments Clause. *Hill.* slip op. at 40 (A-126). The Court of Appeals for the D.C. Circuit's decision in *Landry* has never been

followed, but has instead been roundly rejected by the courts and agencies that have considered its holding. Thus, the SEC's arguments intended to make this case turn on the finality of the SEC ALJ's decisions are misplaced.

### E.  Patriarch Will Suffer Irreparable Harm if the Administrative Proceedings Are Not Enjoined

As already explained, *supra* at pp. 18-23, when evaluating whether "meaningful review" is available in the administrative proceedings, Patriarch faces significant and irreparable harm in the event that the administrative proceedings against it are not enjoined. Importantly, some of these harms include a constitutional component, creating a presumption that the harm is irreparable for purposes of granting an injunction. *See supra* at pp. 22-23.

In contrast to clear and articulable harms that will be suffered by Patriarch, the SEC will suffer no injury if the administrative proceedings are enjoined.[15] The SEC can have no interest in pursuing this case in an unconstitutional administrative setting. Any delay that would be required to

---

[15]    In a recent filing in *Duka*, the SEC declined to answer a question from Judge Berman as to whether the constitutional infirmity of the SEC's ALJ hiring process could be easily cured. Letter to Hon. Richard Berman, *Duka v. SEC*, No. 1:15-cv-00357-RMB (S.D.N.Y. filed June 15, 2015) ("[T]he government does not believe the SEC has any obligation to pursue the [potential remedies] discussed by Judge May. Nor would the Commission be expected to do so at this time . . . . [T]he government believes that the Commission should not act precipitously to modify its ALJ scheme.")

establish such proceedings in a constitutional fashion would be trivial compared to the five-plus years of investigative work undertaken by the SEC before bringing charges in this case. Alternatively, the SEC could dismiss its administrative proceedings now and bring this complex case against Patriarch in a federal district court, which would be a more appropriate venue for dealing with the complicated legal and factual issues involved in the case, and which would afford Patriarch the important constitutional and statutory protections that accompany litigation in an Article III court.

Courts addressing these issues have held that litigants would be irreparably harmed if the administrative proceedings were not enjoined. The district court in *Hill* held that Plaintiff would be irreparably harmed absent an injunction, noting among other factors that the SEC could enjoy sovereign immunity that would limit the potential monetary recovery available to Plaintiff in the event that he prevailed, and that the remedies requested by Plaintiff would no longer be available if the administrative proceeding was already finished by the time his claims could be heard by a federal court. *Hill*, slip op. at 42-43 (A-128-129). The district court in *Duka* made similar findings regarding the harms that would be suffered by plaintiff as part of the administrative proceedings. *Duka*, 2015 WL 1943245, at *10-12.

44

## <u>CONCLUSION</u>

For the foregoing reasons, Patriarch respectfully requests that this Court reverse the decision of the district court and order a permanent injunction against the SEC's administrative proceeding.

Dated:    July 17, 2015                 Respectfully submitted,
              New York, New York

/s/ Christopher J. Gunther
David M. Zornow
Christopher J. Gunther
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Susan E. Brune
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, New York 10004
(212) 668-1900

*Attorneys for Plaintiffs-
Appellants*

45

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,147 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14 point font size, Times New Roman.


Dated:  July 17, 2015                    /s/ Christopher J. Gunther
                                         Christopher J. Gunther

                                         SKADDEN, ARPS, SLATE,
                                           MEAGHER & FLOM LLP
                                         Four Times Square
                                         New York, New York 10036
                                         (212) 735-3000

                                         BRUNE & RICHARD LLP
                                         One Battery Park Plaza
                                         New York, New York 10004
                                         (212) 668-1900

                                         *Attorneys for Plaintiffs-
                                         Appellants*